WO  IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| JEANETTE K. LANSBURG and LARRY J. ENCINAS, husband and wife,<br><br>      Plaintiffs,<br><br> vs.<br><br>FEDERAL HOME LOAN MORTGAGE CORPORATION, et al.,<br><br>      Defendants. | No. 2:11-cv-1529-HRH |

O R D E R

Motion to Dismiss

Defendants move to dismiss plaintiffs' amended verified complaint.[1] This motion is opposed.[2] Oral argument was not requested and is not deemed necessary.

Background

Plaintiffs are Jeanette K. Lansburg and Larry J. Encinas. Defendants are Federal Home Loan Mortgage Company and Saxon Mortgage.

---

[1]Docket No. 77.

[2]Docket No. 79.

Plaintiffs allege that in February 2007, they "entered in to a mortgage/deed of trust/security deed/note with Taylor Bean & Whitaker for the real property located at 14394 West Shaw Butte Drive, Surprise, Arizona 85379...."[3] Plaintiffs allege that on February 22, 2008, they negotiated a loan modification with Taylor Bean & Whitaker "due to financial hardship...."[4]

Plaintiffs allege that in March or April 2008, they decided to become foster parents and that their home was approved as a foster care facility.[5]

Plaintiffs allege that in April 2009, they requested another loan modification.[6] Plaintiffs allege that they "started the loan modification process with Taylor Bean & Whitaker" but that their loan was then transferred to Sparta Special Servicing.[7] Plaintiffs allege that in June 2009, they "entered in to another loan modification through Sparta Special Servicing" and that they "executed documents with Sparta Special Servicing regarding a loan modification...."[8]

---

[3] Amended Verified Complaint at 2, ¶ 5, Docket No. 74.

[4] Id. at ¶ 6.

[5] Id. at ¶ 7.

[6] Id. at 3, ¶ 8.

[7] Id. at ¶ 9.

[8] Id. at ¶¶ 10-11.

Plaintiffs allege that after entering into the "loan modification" with Sparta Special Servicing, "servicing on [their] loan was then supposedly transferred to Saxon Mortgage."[9] Plaintiffs allege that they received notice of the transfer when Lansburg was sending her third payment on the loan modification to Sparta Special Servicing.[10] Plaintiffs allege that after receiving notice of the transfer to Saxon Mortgage, they "made payments to Saxon on the loan modification."[11]

Plaintiffs allege that in November 2009, "Lansburg wrote to Saxon concerning her loan modification and continued payments."[12] Plaintiffs allege that Lansburg advised Saxon that plaintiffs "were filing bankruptcy and that the two outstanding personal checks in [Saxon's] possession that had not been cashed would need to be replaced with cashier's checks...."[13] Plaintiffs allege that they "continued to make their monthly payments to Saxon after the filing of the bankruptcy."[14]

Plaintiffs allege that in June 2010, they "were informed by a Saxon employee that they had no loan modification and that all the money they had been paying [Saxon] since

---

[9] Id. at ¶ 12.

[10] Id.

[11] Id. at ¶ 13.

[12] Id. at 4, ¶ 15.

[13] Id. at ¶ 16.

[14] Id. at ¶ 17.

June 2009 did not cover the outstanding payments[.]"[15] Plaintiffs further allege that on the same day, they "found out that their home had already been sold at a trustee sale, which was supposed to have been previously cancelled."[16]  Plaintiffs allege that they then were "forced to vacate" their home and "obtain substitute housing."[17]

Plaintiffs' home was sold at a trustee sale on June 14, 2010 for $240,000.[18] At the time of the sale, the amount of the unpaid debt on the underlying loan was $482,178.96.[19]

Plaintiffs allege that they "paid their monthly payment to Saxon under the terms of the loan modification.  Saxon and FHLMC then breached the loan modification agreement and had the substitute trustee sell [their] home and had [p]laintiffs and their foster children

---

[15]Id. at ¶ 18.

[16]Id. at ¶ 19.

[17]Id. at 7, ¶ 37.

[18]Trustee's Deed upon Sale, Exhibit D, Defendants['] ... Request for Judicial Notice, Docket No. 78.  The court may consider this exhibit without turning the instant motion into a motion for summary judgment because it is a matter of public record.  Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).  Defendants have also requested the court take judicial notice of a certified copy of the Deed of Trust, a certified copy of the March 2008 Loan Modification, and certified copy of the February 11, 2010 Assignment of Deed of Trust.  Exhibits A,B, & C, Docket No. 78.  To the extent that any of these documents are relevant to the instant motion to dismiss, the court may consider them because they are matters of public record.

[19]Trustee's Deed upon Sale, Exhibit D, Defendants['] ... Request for Judicial Notice, Docket No. 78.

evicted from" their home.[20] Plaintiffs allege that they "would not have made their monthly payment under the loan modification agreement if they had known that Saxon and FHLMC had no intent to abide by the terms of the loan modification agreement."[21] Plaintiffs allege that they made $20,000 in payments "as consideration for a loan modification[.]"[22]

Plaintiffs commenced this action on July 6, 2011 in state court.  It was subsequently removed to this court.  In their original complaint, plaintiffs alleged five claims: 1) declaratory relief, 2) conversion of real property/slander of title, 3) breach of fiduciary duty, 4) breach of the covenant of good faith and fair dealing, and 5) misrepresentation. Defendants moved to dismiss all of plaintiffs' claims.  The court granted the motion to dismiss in part and denied it in part.[23]  The court dismissed plaintiffs' request for a declaration that "'[d]efendants are not legally entitled to claim title to the subject Real Property'" with prejudice.[24]  The court also dismissed plaintiffs' slander of title claim with

---

[20]Amended Verified Complaint at 5, ¶ 21, Docket No. 74.

[21]Id. at ¶ 22.

[22]Id. at 6, ¶ 27.

[23]Docket No. 22.

[24]Id. at 16.

prejudice.[25] The court dismissed plaintiffs' misrepresentation claim without prejudice.[26] And, the court denied defendants' motion as to plaintiffs' request for a declaration that "'[d]efendants are not legally entitled to enforce the underlying Deed of Trust or promissory note under their former terms due to the modifications that occurred" and as to plaintiffs' breach of the implied covenant of good faith and fair dealing claim.[27]

The parties then commenced with discovery. After discovery was complete, defendants moved for summary judgment on plaintiffs' two remaining claims. On March 7, 2013, the court granted defendants' motion for summary judgment.[28]

Plaintiffs appealed and on June 12, 2015, the Ninth Circuit vacated this court's judgment and remanded for reconsideration of plaintiffs' claims in light of Corvello v. Wells Fargo Bank, N.A., 728 F.3d 878 (9th Cir. 2013), an opinion that was issued after this court had granted defendants' motion for summary judgment. In Corvello, the Ninth Circuit held that borrowers have a viable cause of action against a loan servicer if the servicer has "accepted and retained the payments demanded by" a trial period plan, "but neither offered a permanent modification nor notified [the borrowers] they were not

---

[25] Id.

[26] Id.

[27] Id.

[28] Docket No. 55.

entitled to one, as required by the terms of the TPP." Id. at 880. "Where ... borrowers allege ... that they have fulfilled all of their obligations under the TPP, and the loan servicer has failed to offer a permanent modification, the borrowers have valid claims for breach of the TPP agreement." Id. at 884.

Upon remand, plaintiffs were given until December 1, 2015 to move to amend their complaint.[29] Plaintiffs so moved, and the court granted their motion to amend.[30]

In their amended complaint, plaintiffs assert four counts. In Count One, plaintiffs seek declaratory relief. In Count Two, plaintiffs assert a wrongful foreclosure claim. In Count Three, plaintiffs assert a breach of contract claim and a breach of the implied covenant of good faith and fair dealing claim. In Count Four, plaintiffs assert negligence claims.

Defendants now move to dismiss all of plaintiffs' claims.

Discussion

As an initial matter, defendants point out that plaintiffs' response to the instant motion was untimely. Defendants filed their motion to dismiss on April 1, 2016. Pursuant to Local Rule 7.2(c), plaintiffs' response was due 14 days later. Excluding the day of service, and including the additional three days permitted under Rule 6(d), Federal Rules

---

[29] Order re Amended Scheduling Order at 1, Docket No. 69.

[30] Order from Chambers - Motion to Amend at 1, Docket No. 73.

of Civil Procedure, plaintiffs' response was due on April 18, 2016. Plaintiffs' response was not filed until April 20, 2016. Plaintiffs did not request an extension of time nor did they provide any reason as to why they filed their response two days late. Because plaintiffs' response was untimely, the court could, pursuant to Local Rule 7.2(i), summarily grant defendants' motion to dismiss. But, because a decision on the merits of defendants' motion to dismiss is preferable and defendants have not been prejudiced by the two-day delay, the court will treat plaintiffs' opposition as timely. However, because this is not the first time plaintiffs have made an untimely filing,[31] plaintiffs are admonished that if this case goes forward, the next time they file a late document, the court may not be as lenient.

Turning then to the merits of defendants' motion, "[t]o survive a Rule 12(b)(6) motion to dismiss, a 'plaintiff must allege enough facts to state a claim to relief that is plausible on its face.'" Turner v. City and County of San Francisco, 788 F.3d 1206, 1210 (9th Cir. 2015) (quoting Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 588 (9th Cir. 2008)). "In assessing whether a party has stated a claim upon which relief can be granted, a court must take all allegations of material fact as true and construe them in the light most favorable to

---

[31]When the court granted plaintiffs' motion to amend their complaint, it did not set a date by which the amended complaint should be filed. Docket No. 73. Local Rule 15.1(a) provides that if a motion to amend is granted, the moving party has 14 days in which to file the amended pleading. The court granted plaintiffs' motion to amend on January 8, 2016. Plaintiffs did not file their amended complaint until March 15, 2016, long after the 14 days had expired and without seeking any extensions of time.

the nonmoving party; but 'conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal.'" Id. (quoting Cousins v. Lockyer, 568 F.3d 1063, 1067 (9th Cir. 2009)). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "This standard 'asks for more than a sheer possibility that a defendant has acted unlawfully,' but it 'is not akin to a probability requirement.'" Id. (quoting Iqbal, 556 U.S. at 678). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) (quoting Iqbal, 556 U.S. at 678).

Count One – Declaratory Relief

Plaintiffs seek "a declaration stating that the [d]efendants are not legally entitled to claim title to the subject Real Property and were not entitled to foreclose on the Real Property and evict the [p]laintiffs from the Real Property."[32] This claim for declaratory relief is dismissed with prejudice for the same reason the court previously dismissed this claim with prejudice.[33]

---

[32]Amended Verified Complaint at 7, ¶ 33, Docket No. 74.

[33]Order at 8, Docket No. 22.

Plaintiffs also seek "a declaration that the [d]efendants are not legally entitled to enforce the underlying Deed of Trust or promissory note under their former terms due to the modifications that occurred."[34] Plaintiffs allege that defendants are not legally entitled to enforce the underlying Deed of Trust or promissory notes because of defendants' "material misrepresentations."[35] This claim for declaratory relief is dismissed. Plaintiffs have alleged no factual support for this claim. This claim is based on allegations that defendants made material misrepresentations. But nowhere in plaintiffs' amended complaint do they allege any specific misrepresentations made by defendants, when any of these alleged misrepresentations were made, or how these alleged misrepresentations were material. All plaintiffs have alleged is that defendants made material misrepresentations, but such conclusory allegations are not sufficient to withstand a Rule 12(b)(6) motion to dismiss. Although it is possible that plaintiffs could allege some factual support for their contention that defendants made material misrepresentations, this claim is dismissed with prejudice because it is duplicative of plaintiffs' substantive claims in Count Three. See Vang Chanthavong v. Aurora Loan Services, Inc., 448 B.R. 789, 803 (E.D. Cal. 2011) (quoting Fimbres v. Chapel Mortg. Corp., No. 09–cv–0886–IED, 2009 WL 4163332, at *5 (S.D. Cal.

---

[34]Amended Verified Complaint at 6-7, ¶ 32, Docket No. 74.

[35]Id. at 6, ¶ 32.

Nov. 20, 2009) ("'federal court may decline to address a claim for declaratory relief' where the substantive claims 'would resolve the issues raised by the declaratory action'").

Count Two – Wrongful Disclosure Claim

"Arizona state courts have not yet recognized a wrongful foreclosure cause of action." Cervantes v. Countrywide Home Loans, Inc., 656 F.3d 1034, 1043 (9th Cir. 2011). Because Arizona has not expressly recognized a cause of action for wrongful foreclosure, plaintiffs' wrongful foreclosure claim in Count Two is dismissed. This claim is dismissed with prejudice because "amendment would be futile." Carolina Cas. Ins. Co. v. Team Equip., Inc., 741 F.3d 1082, 1086 (9th Cir. 2014).

Count Three – Breach of Contract Claims

"In an action on a contract plaintiff has the burden of proof to show, 1) a contract, 2) a breach, and 3) damages." Thunderbird Metallurgical, Inc. v. Ariz. Testing Laboratories, 423 P.2d 124, 126 (Ariz. Ct. App. 1967). Plaintiffs allege that defendants breached the terms of the written loan modification.[36] Defendants argue that this breach of contract claim is not plausible because plaintiffs have failed to allege the existence of a <u>final</u> loan modification. Rather, defendants point out that plaintiffs have alleged that they "executed documents with Sparta Special Servicing regarding a loan modification", that they were aware that there were "certain requirements [that] had to be met in order to qualify for a

---

[36] Amended Verified Complaint at 9, ¶ 50, Docket No. 74.

loan modification[,]" and that they "entered in to a written loan modification documents...."[37] But, defendants argue that plaintiffs never expressly allege that they entered into a <u>final</u> loan modification agreement with defendants. Defendants acknowledge that plaintiffs have alleged that they "completed the trial period under the loan modification document...."[38] But, defendants argue that because plaintiffs did not allege that this was a binding agreement to enter into another contract, <u>i.e.</u>, a final loan modification, plaintiffs have failed to adequately allege the existence of an enforceable final loan modification contract.

As plaintiffs are quick to point out, after <u>Corvello</u>, it is not fatal to their breach of contract claim that they did not allege that there was a <u>final</u> loan modification. As set out above, in <u>Corvello</u>, the Ninth Circuit held that borrowers have a viable cause of action against a loan servicer if the servicer has "accepted and retained the payments demanded by" a trial period plan, "but neither offered a permanent modification or notified [the borrowers] they were not entitled to one, as required by the terms of the TPP." <u>Corvello</u>, 728 F.3d at 880. "Where ... borrowers allege ... that they have fulfilled their obligations under the TPP, and the loan servicer has failed to offer a permanent modification, the borrowers have valid claims for breach of the TPP agreement." <u>Id.</u> at 884.

---

[37]<u>Id.</u> at 3, ¶ 11 & 8, ¶¶ 46-47.

[38]<u>Id.</u> at 9, ¶ 49.

In Count Three, plaintiffs allege that they "completed the trial period under the loan modification documents" and that defendants "failed to comply with their obligations under the loan modification and waited approximately 1 year after promising the loan modification to breach the terms of the written loan modification...."[39]  It is not entirely clear from these allegations what contract plaintiffs are alleging has been breached.  It is not clear whether plaintiffs are alleging that defendants breached a TPP agreement or whether plaintiffs are alleging that defendants breached a final loan modification agreement.  Plaintiffs' vague references to a "loan modification agreement" and "loan modification" documents are not sufficient to state a plausible claim that defendants breached a TPP agreement.  Thus, plaintiffs' breach of contract claim is dismissed. This claim is dismissed without prejudice because it is possible that plaintiffs can state a plausible Corvello claim.

Should plaintiffs decide to amend their breach of contract claim based on Corvello, in addition to clearly alleging that they had a TPP agreement with defendants, that they satisfied their obligations under the TPP agreement, and how defendants breached the agreement, plaintiffs must specifically allege what damages they are asserting flow from the alleged breach of contract. In Count Three, plaintiffs make a conclusory allegation that

---

[39]Id. at ¶¶ 49-50.

as a result of defendants' alleged breaches, they have suffered damages.[40] But, plaintiffs do not allege what specific damages they have suffered as a result of defendants' alleged breach of contract. If plaintiffs elect to file a second amended complaint, they must specifically identify their contractual damages.

To that end, plaintiffs are reminded that "damages for breach of contract are those damages which arise naturally from the breach itself or which may reasonably be supposed to have been within the contemplation of the parties at the time they entered the contract." All American School Supply Co. v. Slavens, 609 P.2d 46, 48 (Ariz. 1980). "Consequential damages are recoverable only where they arise naturally from the breach of a contract and where they were in the contemplation of the parties." Miscione v. Bishop, 636 P.2d 149, 152 (Ariz. Ct. App. 1981). In their amended complaint, plaintiffs allege that they were no longer able to be foster parents after their home was foreclosed on and thus they "ceased to receive income from the State of Arizona" and that "[p]laintiff Lansburg suffered several strokes that are directly related to the stress and turmoil that she endured in having her home and foster children taken away...."[41] Although it seems highly unlikely that such damages were foreseeable at the time the parties entered into a TPP agreement, it might be possible that the loss of the income from the State of Arizona was foreseeable, if, as

---

[40]Id. at ¶ 52.

[41]Id. at 7-8, ¶¶ 38-39.

plaintiffs contend, defendants knew that plaintiffs were foster parents. Plaintiffs also make reference to the payments that they made to defendants during alleged the trial period. If plaintiffs are asserting that these are economic damages that flowed from the alleged breach of a TPP agreement, plaintiffs should make that clear in their second amended complaint, should they elect to file one.

In Count Three, plaintiffs have also asserted a breach of the implied covenant of good faith and fair dealing claim. "The law implies a covenant of good faith and fair dealing in every contract." Rawlings v. Apodaca, 726 P.2d 565, 569 (Ariz. 1986). "The duty arises by virtue of a contractual relationship. The essence of that duty is that neither party will act to impair the right of the other to receive the benefits which flow from their agreement or contractual relationship." Id. at 569-70. "[I]n special contractual relationships, when one party intentionally breaches the implied covenant of good faith and fair dealing, and when contract remedies serve only to encourage such conduct, it is appropriate to permit the damaged party to maintain an action in tort and to recover tort damages." Id. at 576.

Plaintiffs have failed to state a plausible breach of the implied covenant claim for the same reason they have failed to state a plausible breach of contract claim, namely it is not clear from their allegations what contract they are alleging they did not receive the benefits of. Thus, plaintiffs' breach of the implied covenant of good faith and fair dealing claim is

dismissed. Plaintiffs are given leave to amend this claim for the same reason plaintiffs are being given leave to amend their breach of contract claim. Plaintiffs are again reminded that they must allege specific damages flowing the alleged breach of the implied covenant. It is not sufficient to merely allege that they have been damaged as a result of defendants' actions. Plaintiffs are also reminded that tort damages are only available for a breach of the implied covenant claim if there is a "special relationship" between the parties and that courts have found that "[t]he relationship between a bank and an ordinary customer is no more than that of debtor and creditor. The relationship does not give rise to a professional or fiduciary duty." Bowman v. Wells Fargo Bank, N.A., Case No. CV–09–271–PHX–DGC, 2010 WL 1408893, at *3 (D. Ariz. April 7, 2010). The court doubts that, as plaintiffs contend, the HAMP regulations impose a fiduciary duty on a loan servicer.

    Count Four – Negligence Claims

    "In order to maintain a negligence claim, 'a plaintiff must prove four elements: (1) a duty requiring the defendant to conform to a certain standard of care; (2) a breach by the defendant of that standard; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual damages.'" Ritchie v. Krasner, 211 P.3d 1272, 1279 (Ariz. Ct. App. 2009) (quoting Gipson v. Kasey, 214 Ariz. 141, 143 (Ariz. 2007)).

First, plaintiffs assert a negligence claim based on allegations that defendants owed them a duty "pursuant to A.R.S. § 33-807(A) to only sell the Real Property at issue after a breach of default."[42] A.R.S. § 33-807(A) provides:

> By virtue of his position, a power of sale is conferred upon the trustee of a trust deed under which the trust property may be sold, in the manner provided in this chapter, after a breach or default in performance of the contract or contracts, for which the trust property is conveyed as security, or a breach or default of the trust deed.

The statute plainly only imposes a duty upon the trustee, who is not a party here. Plaintiffs' negligence claim based on A.R.S. § 33-807(A) is dismissed. This claim is dismissed with prejudice because amendment would be futile.

In Count Four, plaintiffs also assert a negligence claim based on allegations that defendants "owed a duty to Plaintiff Lansburg to properly process [her] loan modification" and that defendants breached this duty by not processing her loan modification in "accordance with ... the federal regulations governing the loan modification."[43] This is apparently a negligence per se claim. "A person who violates a statute enacted for the protection and safety of the public is guilty of negligence per se." Alaface v. Nat'l Inv. Co., 892 P.2d 1375, 1385 (Ariz. Ct. App. 1994). In their amended complaint, plaintiffs do not allege what specific federal regulations defendants supposedly violated. In their

---

[42]Amended Verified Complaint at 10, ¶ 57, Docket No. 74.

[43]Id. at ¶¶ 56, 58.

opposition to the instant motion, plaintiffs contend that defendants failed to comply with the HAMP regulations. "The U.S. Department of the Treasury, acting under the direction of Congress, launched the Home Affordable Modification Program ('HAMP') in 2009 to help distressed homeowners with delinquent mortgages[.]" Corvello, 728 F.3d at 880. Under HAMP, "borrowers [first] supply information about their finances and their inability to pay their current mortgage to the servicer, and the servicer ... evaluate[s] whether the borrowers qualify for a loan modification." Id. "For borrowers who appear eligible to participate in HAMP, the servicer then prepares a TPP. The TPP requires borrowers to submit documentation to confirm the accuracy of their initial financial representations, and to make trial payments of the modified amount to the servicer." Id. at 880-81. "For borrowers who have made all their payments and whose representations remain accurate, the servicer must offer a permanent home loan modification." Id. at 881.

Plaintiffs argue that defendants, under the HAMP regulations, were required to provide them with a signed copy of the TPP, which defendants failed to do, and that defendants were required to notify plaintiffs in writing on the 91st day after the TPP started that they either qualified for a permanent loan modification or that they were denied a permanent loan modification, which defendants did not do. Instead, plaintiffs contend that defendants waited until September 2010 to provide written notice that defendants were denying plaintiffs' request for a permanent loan modification. Thus, plaintiffs argue that

they have stated a plausible negligence per se claim based on defendants' failure to comply with the HAMP regulations.

"'Negligence per se applies when there has been a violation of a specific requirement of a law.'" Hutto v. Francisco, 107 P.3d 934, 937 (Ariz. Ct. App. 2005) (quoting Griffith v. Valley of the Sun Recovery and Adjustment Bureau, Inc., 613 P.2d 1283, 1285 (Ariz. Ct. App. 1980)). Plaintiffs have not alleged what specific requirement in the HAMP regulations defendants have allegedly violated. Nowhere in their amended complaint is there any allegation about defendants being required to send plaintiffs a signed copy of the TPP nor are there any allegations about defendants being required to take certain action on the 91st day after the TPP started. In fact, nowhere in plaintiffs' amended complaint do they ever specifically refer to the HAMP regulations. Plaintiffs' conclusory allegation that defendants did not process plaintiffs' request for a loan modification in accordance with federal regulations is not sufficient. Plaintiffs have failed to state a plausible negligence per se claim and this claim is dismissed. Plaintiffs' negligence per se claim is dismissed with prejudice as amendment of this claim would be futile because a negligence per se claim based on the HAMP regulations "is, in a different shade of clothing, nothing more than the rebuffed theory that HAMP creates a cause of action." Parks v. BAC Home Loan Servicing, LP, 825 F. Supp. 2d 713, 716 (E.D. Va. 2011). "However, it is well established that there is

no private cause of action under HAMP." <u>Singh v. Wells Fargo Bank</u>, Case No. 1:10–CV–1659 AWI SMS, 2011 WL 66167, at *7 (E.D. Cal. Jan. 7, 2011) (collecting cases).

<u>Conclusion</u>

Defendants' motion to dismiss[44] is granted.  Plaintiffs' claims in their amended complaint are dismissed.  Plaintiffs' claims in Counts One, Two, and Four are dismissed with prejudice. Plaintiffs' claims in Count Three are dismissed without prejudice. Plaintiffs are given leave to amend as to their claims in Count Three only.[45]  Plaintiffs' second amended complaint, should plaintiffs elect to file one, shall be filed on or before June 22, 2016.

DATED at Anchorage, Alaska, this 7th day of June, 2016.

/s/ H. Russel Holland
United States District Judge

---

[44]Docket No. 77.

[45]Plaintiffs are reminded that they do not need to replead "claims dismissed with prejudice and without leave to amend" in order "to preserve them for appeal." <u>Lacey v. Maricopa County</u>, 693 F.3d 896, 928 (9th Cir. 2012).